First, in No. 191727, American Institute for Int'l Steel v. U.S., when we're done with this argument, we will adjourn, confer, and come back with a different Constitution. Mr. Morrison. May it please the Court. Section 232 violates the constitutional prohibition on the delegation of legislative authority because the power given to the President to adjust imports contains no substantive boundaries whatsoever. On the front end, there is a capacious definition of national security which includes anything that affects the economy. Thereafter, the President... Anything that affects the economy can be a basis for... Or any one industry also, Your Honor. Right, but that doesn't mean that imports of tulips might actually... Well, Your Honor, that's an interesting question because there is no indication whatsoever that there's any limitation at all. Your Honor may remember in the Court of International Trade the government was asked the question, could the President ban peanut butter? And the government did not answer that question but was clear that whatever the President did, the Court could not review it. And so, in effect, there's no barrier on the front end. And there's surely no barrier with respect to the remedies. The President can impose tariffs. He can impose quotas, licensing fees or some combination in any amount without regard to any statutory limitation whatsoever. From the beginning of this case, Your Honor, we have asked the government one thing about the boundaries. Please give us one example of something that the President could not do under this statute because the Supreme Court has been clear that there have been... I'm sorry, but why do you think that a refusal to concede in advance without knowing the circumstances means that there are no boundaries? Putting aside the question of judicial reviewability. Well, Your Honor, I take the analogy from the United States against Lopez. This was the case in which the government was seeking to uphold the ban on guns being within 1,000 feet of the school under the Commerce Clause. And an oral argument, the Solicitor General was asked the question, if we accept your theory of the breadth of the Commerce Clause, what is it that Congress could not do and justify under the Commerce Clause? And the Court, the government was unable to point to a single thing. And the Court said there have to be some boundaries under federalism and there have to be some boundaries that the Supreme Court has made clear under delegations of legislative authority. Didn't the Supreme Court conclude in Algonquin that this grant of authority is in fact not unlimited? Well, the Court said that there were boundaries, but it didn't tell us what the boundaries were. But is that, I mean, A, why does that matter, but B, why should that be surprising in an area where authority, whatever else it is, is meant to be flexible? Flexible doesn't mean unbounded. No. And very much dependent under the terms of the statute on circumstances which cannot be predicted in some abstract, in advance way. Well, if that were the law, Your Honor, then there would be no limits whatsoever on the power of the Congress to delegate to the President. You could allow the President to do anything he wants to do. So, for example, in this case, if we were to take it to the extreme, the President could, as we read the statute, decide that, you know, tariffs are not enough. What we want to do is we want to make the payment of the tariffs on steel products non-deductible for income tax purposes. And that will really put teeth in the statute and in these tariffs. Nothing prevents the President from doing that. And if the President can do that, he has taken the place of Congress. We no longer have Congress making the important policy decisions. And the President can just be turned over the power to the President to do whatever the President thinks in his discretion is useful for stemming the problems from imports. I don't think that's what separation of powers is about. The Supreme Court has never suggested that we could completely turn over to the President an unchecked power. But what is present in this case that would allow us not to follow Algonquin's answer to this question? So let me begin with the holding in Algonquin. The holding in Algonquin was that the objection of the challenger there to the imposition of licensing fees was not authorized by the statute. Right, but just so I think I understand this, correct me if I'm wrong, as a prelude to that, there was an argument that said in Algonquin, the statute ought to be interpreted with a constitutional avoidance principle in mind. And the Supreme Court said constitutional avoidance, not only do we not see a problem, we don't even think there's whatever that serious issue standard is met with respect to this statute. That would therefore influence our interpretation of the statute. Isn't it a fortiori that at least for us, never mind what the Supreme Court could do in addressing Algonquin, that we have to conclude Algonquin answered the question? Well, that's what the Court of International Trade concluded, largely seeming to agree with us on the merits of this dispute. And I think that the Court is not bound because at issue in Algonquin was the authority of the President. At issue here is the authority of Congress. We're complaining about what Congress did or, more importantly, what it didn't do by putting any boundaries on the statute. And the only challenge in this case is a facial challenge to the statute. Correct, Your Honor. And we're saying, unlike what the Court said in Algonquin, that everybody agrees that it was permissible to treat imports of oil as within the statute and that it was perfectly agreeable in constitutional imposed quotas. We don't agree that steel can constitutionally be banned here, nor do we agree that the tariffs are a constitutional remedy. Mr. Morris, let me ask you, you gave the example of the purported unbounded power of the President under the statute to relieve people of their tax burden a minute ago. Yes. Wouldn't somebody be able to come in and challenge that under the statute? No, Your Honor. The government's position is absolutely clear that, assuming somebody had standing to object to somebody else's tax or on your own taxes, the government's position is that nothing the President does in exercising his discretion under the statute is judicially reviewable. And, of course, You don't think that there could be a challenge to whether the statute is that broad as to include that action? No, Your Honor, I do not. And you'll have to ask the government. Our position is that, given the cases like Franklin and Dalton, that court has made clear when discretionary determinations have been given to the President, they are not reviewable under the APA because the President is not an agency. And absent some special statute, they're not reviewable. And when the President is exercising his discretion, which is what the government says he does when he chooses remedies, it's not judicially reviewable. It seems to me, tell me if I've misunderstood this, but what you say sounds like what I remember the government's position being. When you're talking about the exercise of discretion, but I don't think it's the government's position or, in any event, I'm not sure it's the law, that violation of a statutory constraint or an unconstitutionality would be unreviewable. Certainly not unconstitutionality, Your Honor. But the statutory constraints, the only statute I'm sorry, the Supreme Court decided in Algonquin what the scope of the statute was. It didn't say we can't decide that. And nor did the government ask them to decide that it was not judicially reviewable. Indeed, in Algonquin, another distinguishing feature is that in that case, although we and the Court of International Trade and the government dispute what the standard regarding presidential review was at that time, the court there actually reviewed the statute and said the remedy that the government imposed was permissible. My understanding of what the government's position is here is that no matter what remedy they choose, it's not judicially reviewable. The only judicial review... But it's a matter of law, Mr. Morris. Don't you think that based on Algonquin and what happened in Algonquin that someone could come in and challenge the hypothetical you posited earlier in the argument? I don't believe so, Your Honor. And if you ask the government, I don't think they will say it's reviewable either. And that's because the only positions that the government says, the only part of the statute the government says is judicially reviewable are whether the president got a recommendation from the secretary and whether he, the president, implemented that recommendation within 90 days. Nothing else is judicially reviewable. Those are procedural... Leaving aside the government's position, which you're articulating for them, and we'll see what they have to say, but leaving that aside, say you were just faced with the question without having heard from the government one way or the other, would you say that the hypothetical you posited in your colloquy with Judge Toronto would be something that could be reviewed? No, Your Honor. It's beyond the authority of the statute. No, Your Honor, because under cases like Franklin and Dalton, the Supreme Court has made clear that when Congress sets up a two-part process here, to the secretary first and then to the president, whatever the president does is not judicially reviewable unless there's a statute that specifically provides for that. And here we have both the choice of remedies and whether the product falls within the triggering exception that it would not be judicially reviewable. Plainly in Algonquin, the court did review it, and at the end of the court's opinion, it says, by the way, I'm paraphrasing, we're not approving everything that might be done under this statute. What we're saying is that this is permissible, and that assumes two things. First, that there are some boundaries, and we have not been able to identify any of them, nor has the government, and the second is that there's judicial review. Given Dalton and Franklin, there is, in our view, no judicial review. Indeed, think about it for a moment. If there were judicial review, what would there be to review? How could we say that it's beyond the statutory mandate when there's nothing limiting the statute? You take other cases involving delegation, take Hampton. Well, what about, Mr. Nelson, the part of the statute that sets forth the factors that the president is to consider? The president, there's no thing. All he has to do is say, I consider them, that there's no ability for the court to second guess. Indeed, that would be a significant problem if this were a straight APA case as to whether that could happen. But I'm sure the government will say today, as it said before, no, if the president didn't consider something, that's not judicially reviewable. How do you respond to the government's argument that here Congress was just delegating authority, at least some of the authority that the president already had with respect to national security and foreign affairs? This statute is based upon both foreign commerce and the tariff and duties clauses of the Constitution. I don't believe any president has ever claimed the authority to be able to impose tariffs on imported goods on his own. Those powers are powers given to the Congress. National security was never mentioned in Algonquin, in the court's opinion in Algonquin. The government did throw in the national security claim as here. But this is not a national security case. And if there are any doubt about that, we know that in this particular case, the Secretary of Defense was asked, do you need steel for national defense purposes? And the Secretary of Defense, as part of the statutory mandate, said, no, we don't need them. So this is, I think, 3056. Do you happen to have a date on that letter, appendix page 3056? It doesn't have a date on it. It was in February. Yes. It was after the January 11th report, I think, right? I believe that is correct. And that letter specifically says that DOD believes that the systematic use of unfair trade practices to intentionally erode our innovation and manufacturing poses a risk to our national security, concurs with the Department of Commerce's conclusion that imports of foreign steel and aluminum based on unfair trading practices impair the national security, and then says one thing that the Secretary had already considered about current needs, representing 3 percent, without saying anything at all about what both the Secretary and later the President said about possible needs in a national emergency looking into the future. Well, first let me say this. And, therefore, capacity of the maintaining. As far as unfair trade practices are concerned, those are different statutes. There is no requirement under 232 that there be any kind of unfair or improper practices by any country with respect to any product. So those are different statutes entirely, and those would present very different problems, certainly on the front end, and almost all of them have provisions, and they're limiting the amount of discretion of the President. Why are we talking about the specifics of the exercise in this case, in a case in which you say you have just a facial challenge? I raised it to make it clear that this is not a national security case. The justification does not say. Judge Stolt asked me the question, and I responded why this was not a national security case, in addition to the fact that Congress relied on its foreign commerce power and its power to impose duties, and that the President has never contended that, on his own, he has an inherent authority to impose tariffs absent some authority from Congress to do so. Mr. Morrison, you have used your rebuttal time. We will restore it, but I think we should hear from the government. Thank you very much, Your Honor. Your Honor, the government's position. Good morning, Your Honors. May it please the Court. In order to affirm the trial court's judgment, this Court need not go any further than reading the Supreme Court's decision in Algonquin, which resolved the precise question that the plaintiffs raise here, whether Section 232 is a constitutional delegation of authority. The Supreme Court concluded that the statute easily fulfills the intelligible principle standard, the same standard that this Court would be required to apply were this Court addressing the issue in the first instance. Could you please address Judge Tronto's question, the hypothetical about tulips, and whether one would be able to go to court and challenge, or I guess maybe not the tulips, but the tax hypothetical, and whether one would be able to go to court and challenge whether that's within the boundaries of the statute or not? Sure. I think what this Court has said most recently in Sil-Fab-Solar, and as early as Maple Leaf Fish in 1985, is that the Court may review presidential action and set it aside if the President acts beyond his statutory authority, clearly misconstrues the governing statute, or there's a significant procedural violation. So in the hypothetical that was given, we believe that that would be an example of an argument that the President has exceeded his statutory authority, the authority limited to adjusting imports, and that would be an argument that could be addressed by the Court in the first instance. I would say that whether or not there's an availability of judicial review, or the scope of the availability of judicial review, is not an issue that the Supreme Court has ever said is part of the non-delegation inquiry. Doesn't it make some logical sense as an initial matter, putting aside whether the Supreme Court has ever said this one way or the other, that whether judicial review is available to effectively enforce whatever limiting principle or intelligible principle there is in the statute? Or if intelligible principle eventually drops out of the analysis, some other standard for measuring the constitutionality of a delegation? Certainly whether there is an intelligible principle will inform whether there's effective judicial review, where judicial review is available. But as we have cited in our brief, there's certainly circumstances in which there's been delegations to the President, particularly in cases of national security or foreign relations, where those kinds of judgment calls are not subject to any judicial review. And importantly, there is judicial review available. We are not arguing, and it is not the law, that there's no judicial review available. What Franklin and Dalton merely said was that continuing to affirm a long-standing tradition of judicial deference to the executives, fact-finding and exercise of discretion, going back, I think, probably earlier than George S. Bush. And here, by executive, you mean the actual constitutional executive, namely the President. In this particular example, the President, yes. So the fact that there is a long judicial tradition rooted in separation of powers as between the executive and the judiciary doesn't really answer the question that's been presented by this case, which is, has Congress unconstitutionally delegated its lawmaking power to the executive? And Congress did not. Congress set forth the policy that it wants the President to follow. It's identified the individuals who are charged with certain aspects of the investigation and the fact-finding. And it's delineated what the President is authorized to do. And there are meaningful boundaries. The President may only adjust the imports of the article and its derivatives that have been the subject of the investigation by the Secretary of Commerce. And the Supreme Court said that those boundaries are not unlimited. So, again, I... Is there a source that gives some kind of definitional content to national security? Or for these purposes, is it an undefined term? Subsection D of the statute provides a long list of factors that Congress... And those are non-exclusive lists? They are non-exclusive. They also say that any other relevant factors, factors that are relevant to the national security purpose of the statute, which is to prevent the impairment of national security that is being caused by... Right, I was asking a question not about the circumstances that might be relevant to a determination of national security, but a definitional question, what national security means. It's more than national defense. I think one can infer that from the list of considerations that go into it. But beyond that, what is it? So, again, I think it is, in some sense, both a judgment call on the part of the President that was intentional that the Congress wanted the person who had, or the official who had the best available information, the best advisors, the best access to information to make that determination. But subsection D both informs, those factors both inform, the remedy that the President may impose, and also his determination about whether there is being a threat, whether a threat of impairment to national security exists. And the Court's absolutely correct. Let me ask the question maybe a different way. So I think in, I don't know, 1947 or something, there was a National Security Act. Did that have a definition of national security? Is there a definition of national security in other statutes that would bear on this, that would go anything beyond, that would go any inch beyond that two-word phrase in understanding what the concept is, not what might support a finding that the concept is applicable? I don't believe there's, I don't know the answer to that question. What I can say is that I don't believe that Congress intended there to be, because the question of national security is such a broad and judgment-filled question, I don't believe that Congress, at least with respect to what the President has authorized to do in this particular statute, intended to provide a precise definition. It provided several factors for the President to consider and then also indicated that the President should consider any other relevant factors. Do you view the language in Section C1A, Roman numeral I, determined whether the President concurs with the finding of the Secretary? Do you view that as being a fact-finding, or because there is so much discretion in the definition of national security, is it something more than a fact-finding? Well, I think in determining whether the President concurs with the finding of the Secretary is that, in this particular case, the imports of steel articles are threatening to impair the national security. The President makes his own factual determination, factual finding to reach that determination, but yes. But in doing so, he's also interpreting what those factors mean and also interpreting what the word national security means. Absolutely, yes. Setting Algonquin aside for a minute, how would you distinguish this case from a case like Schechter? Well, a case like Schechter, the constitutional invalidity that was found in Schechter that essentially, Schechter is the poultry case, yes, that the President was delegated the power to make law, to make these unfair competition codes without any guidance from the Congress about what the policy was to drive these unfair competition laws that were then used to impose criminal penalties on the plaintiff in that case, or the defendant in that case. Here, Congress has set forth a policy. The law is that whenever there is a threat of impairment to the national security that's caused by the importation of articles, then we are to adjust the importation of the articles so that there's no longer a threat of impairment. That's the law. And the responsibility of the President is to identify the factual circumstances in which applying the law is appropriate and to exercise his judgment in determining what is the best way to adjust the import. So whether it is by quotas, by tariffs, by some other means, what is the way to do that? So there hasn't been a delegation of legislative authority or lawmaking power to the President. The President is charged with finding facts, identifying the circumstances in which the policy is to be applied, and then applying it. Absolutely, there is a great amount of discretion that's been afforded to the President in this circumstance. And that is completely consistent with the body of law, of non-delegation doctrine cases in which, particularly in the areas of foreign affairs, foreign commerce, national security, the President often has a large amount of discretion and judgment to exercise the law. And I think you can look at cases of this Court and cases of this Court's predecessor, in Florsheim, in Yoshida, in Star-Kissed Foods. Those are all examples of, indeed, Field v. Clark, J.W. Hampton, other trade cases that even the Supreme Court has decided. All of those involve extremely large exercises of judgment that rests with the President. And that's consistent with over 200 years of cooperation between Congress and the President in those particular areas of law. It is important to note that the Supreme Court, Professor Morrison is absolutely correct, the Supreme Court didn't need to resort in Algonquin to this additional principle of law that in areas of national security and foreign affairs, where we're on the line, the fact that the President has co-existent powers in those areas may resolve any constitutional concerns. The Supreme Court didn't need to go there in Algonquin, which I think further suggests that there's no concern of violation of the non-delegation doctrine. Algonquin remains good law, and to the extent that even the Court were to believe that there's been some change in the availability of judicial review that's available, we disagree that there's been any change since 1976. But this Court is still nonetheless obligated to follow Algonquin, and should the Supreme Court want to revisit that, it would be within their purview, but not this Court. And if the Court has no further questions, we would respectfully request that the Court affirm the judgment of the Court of International Trade. Thank you, Your Honor. A couple of quick points. First, in the factors to be taken into account in determining whether this is adjusting imports as a national security, Section 232D, in addition to all the other things it says in there, twice it says, without excluding any other factors, so further emphasizing the open-ended nature. If what the President issued in proclamations here had been subject to approval and approved by Congress, there would be no constitutional question about it. And that would be because the Congress can make the kind of arbitrary decisions without distinction between products and remedies, just the kind that the President made here. But the reason under our constitutional system why the Congress can do that is because there are significant checks built into the legislative process. Both houses have to approve the law, the President has to sign it or be it enacted over his veto. None of those checks is present here. The government says that my tax example, they would review it for whether it's in compliance with the statute. There's not a word in this statute that suggests that that would be an improper use of the President's power. And that's essentially the problem here. And we submit, Your Honor, that the Supreme Court was clear in Gundy that the delegation doctrine is not dead. It was clear from Justice Kagan's opinion, although she found that the statute provided, and it's clear from Justice Gorsuch's opinion. But if the government is right here that this statute is a proper delegation of legislative authority, then indeed the delegation doctrine is dead and we do not believe it is. Thank you, Your Honor. Thank you. The case is submitted. We will adjourn for a bit and then return. Thank you. All rise. The court will now take a short recess.